

FILED

NOV 17 2017

CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE STATE OF SOUTH DAKOTA

MARTY NOBLE  AND HOLLI               :     CIVIL No. 17-5088
TELFORD
                                     :
        Plaintiffs                         VERIFIED COMPLAINT
                                     :
        v.                           :
                                           Demand for Jury Trial
AMERICAN NATIONAL PROPERTY &
CASUALTY INSURANCE CO; BOARD-        :
WALK PROPERTY MANAGEMENT CO.,
KEVIN WEST, LEHI OASIS, LLC;         :
DAVID L PARKER, AUSTIN B. CALES;
JERED ELDRIGE IN HIS OFFICIAL        :
Capacity,  MARCIA HULTMAN in her
official  capacity as cabinet Secretary :
for the Division of Insurance, South
Dakota, Robert J. Poulsen and Poulsen :
and Skousen.
        Defendants                   :

                                     :
_____

COME NOW Plaintiffs to allege as follows:

### SUBJECT MATTER JURISDICTION

1.    This Court has subject matter jurisdiction over Plaintiffs federal claims under the
federal Racketeering Act,  "RICO",  18 USC section 1961, et seq.;   the Electronic Funds
Transfers Act, 15 U.S. Code § 1693,   the Fair Credit Reporting Act,  15 U.S. Code § 1691,
Section 1983 for  Ex Parte Young claims against state officials,    section 504 of the
Rehabilitation Act;  the Federal Fair Housing Act under its Accommodation provisions and for
retaliation and interference with Housing rights under § 3617 and 24 CFR § 100.7(a)(1) (iii);
under  federal and state common law for breach of contract and the covenant of quiet
enjoyment, for pendent jurisdiction under Plaintiff's RICO claims and supplemental jurisdiction
over Plaintiff's state law claims for wrongful conversion,  trespass to chattel,  Deceit, abuse of

process, Unfair Business Practices,  unjust enrichment, and under the rule of Nevada v. Hall
and for injunction.

## PERSONAL JURISDICTION

2.    Personal jurisdiction and venue exists in the state of South Dakota under RICO's
nationwide service of process provision via  FRCP rule 4(k) and  RICO's specific personal
jurisdiction and venue statutes under 18 USC section 1965(a),(b) and (d).  Moreover, since at
least two  defendants may be served in this state, i.e.  American National Property and
Casualty Insurance and Marcia Hultman, the cabinet secretary of the state of South Dakota,
and because no  other district court will have jurisdiction over all of the parties,  Personal
jurisdiction over all  defendants exists under the pendant party jurisdiction statute outlined in
United Mine Workers v. Gibbs,  383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) and
because the defendants conspired to deprive plaintiff of properties impacting Plaintiffs in any
state where they have assets.  Furthermore, 18 USC section 1965(a),(b) and (d) provide for
jurisdiction in this state.[1]

---

1.    In GILL v. NAKAMURA, Civ. No. 14-13621-NMG (D.MA, 2015), the federal court
issued a well reasoned opinion of the contacts analysis required to be performed in a federal
question  proceeded under RICO and  concluded in part as follows:

On  September 12, 2014,  plaintiff  filed  the complaint setting out  the
following: (1) breach of implied covenant of good faith and fair dealing (Count I);
(2) fraud (Count II); (3) violation of the Racketeer Influenced and Corrupt
Organization Act ("RICO"), 18 U.S.C. § 1962(c) ("section 1962(c)") (Count III);
and (4) violation of the conspiracy provision of RICO, 18 U.S.C. § 1962(d) as a
result of violating 18 U.S.C. §§ 1503, 1510, 1511, 1512 and 1513 (Count IV).
(Docket Entry # 1). Defendant filed a motion to dismiss for lack of impersonam
jurisdiction.

In conducting a review of a Rule 12(b)(2) motion under the prima facie
method, the "'specific facts affirmatively alleged by the plaintiff'" are taken as
"'true (whether or not disputed) and'" construed "'in the light most congenial to
the plaintiff's jurisdictional claim.'" Negron-Torres v. Verizon Communications,
Inc., 478 F.3d 19, 23 (1st Cir. 2007). Additional facts may be provided by
affidavits and documentation during 1086-87; Universal Trading & Inv. Co., Inc.
v. Bureau for Representing Ukrainian Interests in Intern. and Foreign Courts,
898 F.Supp.2d 301, 317 (D.Mass. 2012).

As an initial matter, plaintiff labels the complaint a "Verified Complaint."
(Docket Entry # 1). "A verified complaint signed under the pains and penalties of
perjury is . . . treated as an affidavit." Provanzano v. Parker, 796 F.Supp.2d 247,
254-55 (D.Mass. 2011).

Plaintiff  alleges  that  subject  matter jurisdiction in this court is proper
pursuant 28 U.S.C. § 1331 because this case involves a federal question, i.e.,

## GENERAL ALLEGATIONS

1.   Plaintiff TELFORD entered into a rental contract with a disabled person, Marty Noble, a protected under the Federal Fair Housing Act "FHA" in 2007. The rental contract involved a manufactured home over which Plaintiff TELFORD was the designated landlord and which was located in a smal mobile home park owned by Dennis Gourley, in Utah.

2.   Plaintiff Telford's rental contract to a disabled person was protected from interference under the "FHA", 42 USC § 3617, which provides that :

RICO. (Docket Entry # 1, p. 2, ¶ 3). **"When the district court's subject matter jurisdiction rests wholly or in part on the existence of a federal question, the constitutional limits of the court's personal jurisdiction are drawn in the first instance with reference to the due process clause of the fifth amendment."** Lorelei Corp. v. Cnty. of Guadalupe, 940 F.2d 717, 719 (1st Cir. 1991) (emphasis in original).

Inasmuch as defendant argues that she lacks the requisite minimum contacts with the state of Massachusetts, she mistakenly applies the Due Process Clause of the Fourteenth Amendment. See id.; (Docket Entry # 21, p. 2). **"It is clear that the fifth amendment `permits a federal court to exercise personal jurisdiction over a defendant in a federal question case if that defendant has sufficient contacts with the United States as a whole.'"** Lorelei Corp., 940 F.2d at 719 (quoting Whistler Corp. v. Solar Electronics, Inc., 684 F.Supp. 1126, 1128 (D.Mass. 1988)). In addition, **"sufficient contacts exist whenever the defendant is served within the United States.**

Therefore, in order for this court to have personal jurisdiction over defendant, **plaintiff need only establish that defendant has sufficient contacts with the United States as a whole by offering evidence to show that defendant is a resident of the United States and was served in the United States.** See Stafford v. Briggs, 444 U.S. 527, 554 (1980); Lorelei Corp., 940 F.2d at 719.

In the complaint, plaintiff alleges that defendant resides in Rollinsford, New Hampshire. (Docket Entry # 1). Additionally, the affidavit of service, which is part of the record, indicates that defendant was served with process on October 9, 2014, at 77 Front Street in Rollinsford, New Hampshire. (Docket Entry # 5). New Hampshire is within the sovereign of the United States. Accordingly, this court and any district court of the United States would have personal jurisdiction over defendant. See Lorelei, 940 F.2d at 719 ("sufficient contacts exist whenever the defendant is served within the sovereign territory of the United States").

**"In a federal question case a federal court need not inquire into whether `sufficient contacts' for personal jurisdiction exist if the defendant is within the territory of the sovereign —the United States— when served."** Catrone v. Ogden Suffolk Downs, Inc., 647 F.Supp. 850, 853 (D.Mass. 1986). The defendant's objection to personal jurisdiction is rejected.

"**It shall be unlawful to coerce, intimidate, threaten, or interfere with** any person . . . on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title. (d)."

3.    Plaintiff's rental contract with the Park owner provided that Plaintiff TELFORD or her agent would pay all lot rents to the Utah Mobile Home Park owner and that the Park Owner would grant the disabled tenant a yard maintenance accommodation which provided that the Park Owner would be responsible for all yard care and outside maintenance activities given the tenants disabilities of  brain injury,  attendant seizures, and because the tenant was crippled and therefore mobility challenged.  During the agreement for a  maintenance accommodation,   the Park owner was presented with authority **Boulder Meadows v. Saville, 2 P.3d 131, (Colo.App.2000)** wherein **the Colorado Appellate affirmed that the Mobile home Park owners failure to maintain the yard of a handicapped person upon request by accommodation,  resulted in a $150,000 FHA award to the handicapped person.**

4.    In addition, there was a weed tree problem attaching to the property and which had a history of displacing  manufactured homes placed on triangle stilts.   At all times herein mentioned,   the owner acknowledged that he was liable for any weed trees that caused harm to a tenant's mobile home pursuant to Fancher v. Fagella, 650 S.E.2d 519 (2007).   Based on the foregoing, the Park owner was committed to complying with the accommodation agreement which was protected from interference and discriminatory impact under the FHA via 42 U.S  Code § 3604 (f)(2)(B),(C) and (3)(B). See Douglas v. Kriegsfield, 884 A.2d 1109, 1121 (D.C. 2005) (**explaining the "general rule under the Fair Housing Act that a reasonable accommodation defense should preempt any state law to the contrary."**).

5.    The former Park owner has received un-interupted payments over the past 10 years with the last agreed lot payment bring  $120 per month.   The ongoing receipt of payments from Plaintiff TELFORD or her agents established an obligation to hold personal jurisdiction over the defendant mobile home lot owners and their successors in interest in Plaintiff's chosen forum.   See Cherry Bekaert Holland v. Brown, 99 N.C.App. 626, 630-31, 394 S.E.2d 651, 655 (1990) (payments from in-state checking account establish personal jurisdiction); Ostrem v. Prideco Secure Loan Fund, 12–1708 (IA, 2014)(**Defendant PrideCo continued to advance funds each month to fund the life insurance premiums on behalf of Ostrem, an Iowa resident**.); McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223–24, 78 S.Ct. 199, 201–02, 2 L.Ed.2d 223, 226–27 (1957) (holding constitutional the exercise of personal

jurisdiction over an out-of-state insurance company **where insurance premiums continued to be funded from the forum state**.); Continental American Corp v. Camera Controls Corp., 692 F.2d 1309, 1312 (10th Cir. 1982)(payment obligation from forum state); Federal Deposit Ins.Corp v. .Culver, 640 F.Supp. 725, 727 (D.Kan. 1986); Burger King, 471 U.S. at 473 ("with respect to interstate contractual obligations we have emphasized that parties who reach out beyond one state and create obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities").

6.   From 2014 to December of 2016, the disabled tenant left the manufactured home landlorded by TELFORD to receive special care concerning her brain injury and other illnesses.  GOURLEY, the former mobile home lot owner continued to promise that he would maintain the premises under the accommodation agreement during the disabled tenants absence. He did not.

7.   When the disabled tenant returned to her home in December of 2016, she was constructively evicted because the weed trees had invaded the structural integrity of dwelling as well as the plumbing, heating and cooling systems to the home.

8.   Plaintiff TELFORD submitted an insurance claim to the then carrier Allstate, who refused to indemnify said claim because the loss was due to the owner GOURLEY's trespass of his weed trees.   It was Plaintiff's position that ALLSTATE should have covered the damages, then act as a subrogee to collect the damages against the premise liability insurer. Nevertheless, TELFORD was committed to borrowing funds from Bank of the West to pay for the repairs upwards of  $38,000.

9.   Nevertheless a bill was ultimately submitted to GOURLEY for the damages in May of 2017.   In August of 2017, GOURLEY informed plaintiff TELFORD  that he had sold the PARK and to look to the new owners.  Pursuant to Restatement of Torts (Second) § 343 (1965),

> A possessor of land is subject to liability for physical harm caused by his property to others by a condition on his land, . . . if he (a) knows *or by the exercise of reasonable care* would discover the condition, and should realize that it involves an unreasonable risk of harm to others; and (c) *fails to exercise reasonable care to protect them against the danger."*

10.   Reportedly, the offer to sell the property had been in the works for several years. Plaintiff alleges that the new owners upon inspection of the Park should have in the exercise of reasonable care discovered that the Park suffered from a problem of weed tree infestation which involved an unreasonable risk to tenants in the Park during the time the new owners were

entertaining purchasing the property and while Plaintiff's property was obviously over blighted with this weed tree infestation which visibly dismantled the stairs and other exterior structures to plaintiff's building.   In fact, the new owners had purchased at least one of the trailers in the Park that was in like disrepair from this weed tree infestation, had acquired a crew to repair and improve this trailer, and had then rented the trailer out to new incoming tenants immediately after the sale was culminated in May of 2017.   Moreover, while Plaintiff corrected the weed tree problem in the tenants side yard during her repair of the property damages in early 2017, as further detailed herein, the Plaintiff was unable to access the weed trees in her neighbors yard because of trespass issues and these weeds trees  have now caused additional  harm to Plaintiffs property which has coupled with the past invasion prevented the home from being removed from the Park as recently opined by  several tree excavators.

11.   As aforesaid, Plaintiff was advised by Gourley in August of 2017,  that he had sold the PARK to new owners on May 30,  2017. Plaintiff contacted the new owners to obtain a continuation of the accommodation agreement they shared with Gourley for yard maintenance.  The Accommodation demand also made a claim for damages in the amount of $38000 given the trespass tort was conveyed with the land.  Finally,  the accommodation request  demanded that the owners removed the weed trees in the neighbor's yard that was presently displacing Plaintiff's home and causing more damages.  The new owners classified as the OASSIS defendants to include OASSIS as the Park Owner, Parker and Cales as the owners of Oassis, and Boardwalk and West as their landlords, refused to grant Plaintiff any accommodation request, and further,  refused to correct the offending trespass in  the neighbor's yard with respect to their weed trees displacing  Plaintiff's home.   In response,  the new owners offered Plaintiff $10,000 to buy plaintiff's home, well below the market value of $156,000.

12.   TELFORD informed  the OASSIS defendants that she would not take their extortionate offer.    In the interim,  the weed trees displaced Plaintiff's home, caused more appliance and water damages and caused black mold to collect in the home such that the tenant Noble had to leave the home for serious health issues created by the black mold and presently resides in South Dakota with relatives.

13.   TELFORD  subsequently advised  the  new owners of  the new damages and made a demand for indemnification.   In retaliatory response, the new owners converted Plaintiff's lease to a month to month lease, posted a 30 notice of lease termination and to vacate the property on the door of the vacant home (exhibit "1" attached)   knowing that the home was now structurally unsound to be removed from the lot because of displacement by tree roots which had embedded themselves underneath the home's framework and further shiffted walls and the

ceiling on the home, an informed Plaintiff by lack of sufficient notie that they were going to charge Plaintiff treble damages and attorneys fees for holding over the mobile home lot. However the lease termination notice was void under  Utah's Mobile Home Residency Act for the following reasons:

U.C.A. 57-16-6 provides that "A legal action to terminate a lease based upon a cause set forth in Section 57-16-5 (here alleged failure to pay rent) may not be commenced except in accordance with the following procedure:

**(1) (d) . . .by affixing a copy of the notice in a conspicuous place on the resident's or person's mobile home AND also sending a copy through registered or certified mail addressed to the resident or person at the person's place of residence (emphasis added).**
**(2) (a) The notice required by Subsection (1) shall set forth: (i) the cause for the notice and, if the cause is one which can be cured, the time within which the resident or person has to cure; and (ii) the time after which the mobile home park may commence legal action against the resident or person if cure is not effected.**

14.    The OASIS defendants never sent TELFORD or the tenant a copy of this lease termination notice by certified or registered mail to their Nebraska or South Dakota residence addresses. Furthermore,  the notice did not set forth any approved cause under  U.C.A. 57-16-6 that permitted termination of a lease that was previously non-terminal except for payments of rents.  The Notice was posted for the sole purpose of stealing Plaintiff's home by default knowing both that the home could not be moved from the Park and also that both Plaintiffs were disabled and also did not have funds to move the home from the park.

15.    TELFORD than noticed the  OASSIS' defendants attorneys POULSEN and P&S that the Notice was void for a myriad of reasons.  Subject to this notice,   the AOSIS defendants, POULSEN  and P&S then falsified grounds for Plaintiffs default by arguing that Plaintiffs had not made their lot rent payments for the month of September 2017.  Plaintiff emailed a copy of her September 2017 payment to defendants attached hereto exhibit "2". The OASIS defendants refused to cash the cashiers check and notified Plaintiffs by phone that they would no longer be chasing any of Plaintiff's rent checks. On September 15, 2017, the  OASIS defendants through their attorney served Plaintiff Telford aka Holli Lundahl with a 5 day eviction action for failure to pay rents. See exhibit "3" attached hereto.

16.    Plaintiff filed a motion to dismiss for lack of subject matter jurisdiction with the sitting court Jared Eldridge.  Jared Eldridge scheduled a hearing on the merits of the eviction

action for November 9, 2017.  Any ruling entered by Jared Eldriuge will as a matter of law be void for lack of subject matter jurisdiction,  because Plaintiff's never failed to pay rents. Accordingly,   Plaintiffs bring this action against ELDRIDGE under ex parte young for declaratory and injunctive relief  to decree any process issued by ELDRIDGE void ab initio for lack of subject matter jurisdiction and to enjoin this defendant from further acting.

17.   In the meantime,   Plaintiff TELFORD obtained insurance through a new carrier, i.e. American National Property and Casualty Insurance. Co.  "ANPAC" when Allsate failed to honor their subrogation duties.

18.   In February of 2017,  TELFORD  obtained over the internet new declarations pages for homeowners insurance, auto insurance and trailer insurance.  Attached hereto as exhibit "4" is HOLLI's redacted declarations page for homeowners insurance. Attached hereto as exhibit "5" is HOLLI's  redacted declarations page for auto insurance.  Attached hereto as exhibit "6" is HOLLI's redacted declarations page for trailer insurance.  TELFORD never agreed to having more than $82.07 automatically withdrawn from her bank account every month.  An ANPAC agent sent TELFORD notice of the  monthly autopay amounts to be withdrawn.  See exhibit "7" attached.

19.   ANPAC could automatically withdraw premium payments from TELFORD's bank account to meet his financial obligations under the declarations policy as permitted under  the Electronic Funds Transfers Act, 15 U.S. Code § 1693.    Plaintiff provided Defendant with Plaintiff's bank account and routing account numbers to authorize Defendant to electronically transfer funds.    "The EFTA, like the [Truth-in-Lending-Act] and other [Consumer Credit Protection Act] provisions, is a remedial statute accorded a broad, liberal construction in favor of the consumer."  Bultemeyer v. Fitness Alliance, LLC, No. CV-12-2619-PHXLOA, 2014 WL 667585, at *3 (D. Ariz. Feb. 20, 2014).

8.   Regulation E, issued by the Board of Governors of the Federal Reserve System, further articulates the authorization requirements for preauthorized electronic fund transfers. See 12 C.F.R. § 205 et seq.  Regulation E states that "[p]reauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer identifying the substantial terms of the policy and the amount of premiums to be withdrawn monthly from the bank account.  **The person that obtains the authorization shall provide a copy to the consumer." 12 C.F.R. §**

WHEREFORE,  Plaintiff prays for the following

1.   For compensatory and general damages allowed by law for all of Plaintiff's tort claims;

2.    For treble damages in  the amount  allowed by law for  Plaintiff's RICO claims;

3.    For any other  equitable and  legal  relief  the  court  deems  fair  and reasonable;

4.   For attorneys fees and court costs, if this case should go to trial;

5.   For trial by jury;

6.   For  pre  and  post  judgment  interest at the  contract rate  of  10% per annum as provided under Wyoming law;

## VERIFICATION UNDER PENALTY OF PERJURY

The undersigned verify that all statements made herein are true and correct under penalty of perjury under  28 USC 1746(2).

_____        _____
MARTY NOBILE                                          HOLLI   TELFORD