### UNITED STATES DISTRICT COURT
### DISTRICT OF SOUTH DAKOTA
### WESTERN DIVISION

| | | |
|---|---|---|
| MARTY NOBLE AND HOLLI TELFORD, | ) ) ) | CIVIL No. 17-5088 |
| Plaintiffs, | ) ) | |
| v. | ) ) | **BRIEF IN SUPPORT OF DEFENDANT AMERICAN NATIONAL PROPERTY & CASUALTY INSURANCE CO.'S MOTION TO DISMISS** |
| AMERICAN NATIONAL PROPERTY & CASUALTY INSURANCE CO.; BOARD-WALK PROPERTY MANAGEMENT CO., KEVIN WEST, LEHI OASIS, LLC; DAVID L. PARKER, AUSTIN B. CALES; JERED ELDRIGE in his official capacity, LARRY DEITER in his official capacity as Director for the Division of Insurance for the State of South Dakota, ROBERT J. POULSEN and POULSEN & SKOUSEN. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendant. | ) | |

Comes now Defendant American National Property & Casualty Insurance Co., by and through its attorney of record, Gregory J. Sperlich, and submits this Brief in Support of Defendant's Motion to Dismiss.

### I.  PLAINTIFFS' CLAIMS SHOULD BE DISMSSED FOR FALIURE TO STATE A CLAIM.

Plaintiffs Marty Noble ("Noble") and Holli Telford ("Telford") have brought suit against American National Property & Casualty Insurance Co. ("ANPAC"), among others, asserting violations of the Federal Racketeer Influenced and Corrupt Organization Act ("RICO"), the Electronic Funds Transfer Act ("EFTA"), and various state laws. [Doc. 8].

1

The facts asserted in the Plaintiffs' First Amended Complaint ("FAC") arise out of property damage occurring in, and a subsequent eviction proceeding brought in, the State of Utah. However, Plaintiffs' pleadings establish that ANPAC has no connection with, and did not insure, any of Plaintiffs' property located in Utah. ANPAC has no relationship with Plaintiff Noble. Plaintiffs' did not plead any RICO violations against ANPAC and the Electronic Funds Transfer Act as plead by Plaintiffs does not apply to ANPAC. Finally, Plaintiffs' attempt to bring South Dakota state law claims against ANPAC based on Idaho insurance policies insuring property located in Idaho must fail. Plaintiffs have not, and cannot, plead any cognizable claim against ANPAC; their claims against ANPAC should be dismissed for failure to state a claim.

## II.  TELFORD IS A VEXATIOUS LITIGANT.

Holli Telford, also known as Holli Lundahl, [Doc. 8, first sentence], has been found to be a vexatious litigator in a number of federal district courts and state courts. Various state and federal courts have placed filing restrictions on her because she fails to follow local rules, ignores Court deadlines, and abuses the judicial system.

1. United States Court of Appeals for the Ninth Circuit *In re Lundahl* number 97-80258 (9th Cir. 1997).
2. United State Court of Appeals for the Tenth Circuit: *Johnson v. Stock*, 2005 WL 1349963 (10th Cir. 2005).
3. United State District Court for  the District of Utah: *L.A. Homeowners, Inc. v. Lundahl*, 2006 WL 2459371 (D. Utah 2006).
4. United States District Court for the District of Idaho: *Lundahl v. Nar, Inc.*, 434 F.Supp.2d 855 (D. Idaho 2006).
5. Idaho Supreme Court: *Telford v. Nye*, 154 Idaho 606 (2013).

6. United States District Court for the Western District of Texas: *Lundahl v. Hawkins*, 2009 WL 3617518 (W.D.Tex. 2009) aff'd 407 Fed.Appx. 777 (5th Cir. 2011).
7. Wyoming Supreme Court: *Holli Lundahl v. Elli Lilly & Co.*, S-15-0061 (Wyo. 2015).

In 2006, the United States District Court for the District of Idaho determined, based on Telford's (then Lundahl) filing history in Idaho, Utah and California, that Telford is a vexatious litigant. *Lundahl v. Nar, Inc.*, 434 F.Supp.2d 855, (D. Idaho 2005). The court noted that in some cases, like this case, parties alleged that Telford perpetrated a fraud on the court by filing altered or false documents, including service of process documents. *Id.* at 859. As a consequence of her harassing and frivolous filings, Telford may no longer file any action, pleading, or letter in the United States District Court for Idaho without either (1) being represented by licensed counsel, or (2) obtaining leave of court. *Id.* at 860

Also in 2006, Telford (then Lundahl) had filing restrictions placed on her by the federal district court in Utah. *L.A. Homeowners Aid, Inc. v. Holli Lundahl*, 2006 W.L. 2459371 (D. Utah 2006). The court ordered that all filings be collected by the Clerk and forwarded to a Magistrate Judge for review. *Id.* at 5. In that case the court cited every case in which Telford had filed in United States District Court. *Id.*

All of the facts in this case occurred in either Idaho or Utah—two jurisdictions that have declared Telford to be a vexatious litigant. The insurance coverage at issue and all of the facts surrounding that coverage deal with Idaho policies of insurance covering property in Idaho or acts involving those policies

3

that occurred in Utah (where vandalism claim to vehicle allegedly occurred). The property at issue in this case is (or was) located in Utah. Since Telford has been barred from filing in the United States Courts of Idaho and Utah, this filing is an attempt to end run those filing restrictions.

### III.  TELFORD MISLEADS THIS COURT.

The crux of Plaintiffs' claims against ANPAC surround two insurance policies issued to Telford. The first policy was a homeowner's policy. Telford attaches a redacted (prior, superseded) declaration page as evidence of her homeowner's coverage.[1] [Doc. 8, Exhibit 4]. However, in an apparent effort to mislead this Court into the conclusion that the policy covered Telford's manufactured home in Utah, Telford redacts key information from that declaration page. Attached as Exhibit A to this brief is a true and correct copy, unreacted, of a declaration page of the ANPAC homeowner's policy issued to Telford. The information in Exhibit A makes it clear that Telford redacted any information, which even a casual reader would observe, indicating that the insurance provided by ANPAC was for a home in Idaho. She redacted her Idaho address, as well as the description of the insured property, which is in Idaho. She redacted the rating information indicating the home was a family dwelling built in 1976 (not a manufactured home) and that it is within the Oneida County Fire Department. She also redacted the name of her agent. The un-redacted

---

[1] Since the redaction rules only speak to social security or tax I.D. numbers, dates of birth, names of minor children, financial account numbers, and in the case of criminal cases, home addresses, it is curious why it was indicated that Exhibit 4 attached to the complaint was redacted Fed. R. Civ. P. 5.2 and Fed. R. Crim. P. 49.1.

4

declaration page establishes that ANPAC covered a family dwelling built in 1976 located in Malad City, Idaho—not a manufactured home in Utah.

Similarly, Telford redacted the same information from the (prior, superseded) declaration pages she attached regarding her automobile policy. That policy covered a 1998 Honda Civic, a 1998 Jeep Grand Cherokee, and (eventually) a 2001 travel trailer. [Doc. 8, Exhibits 5 and 6]. Attached as Exhibit B to this brief are true and correct copies of (prior) declarations pages for Telford's automobile policy.[2] As is evident from the complete declaration pages, Telford redacted her Idaho address, the Idaho rating address for the vehicles, and the Idaho address of her insurance agent. She also failed to attach the second page of the declarations page which clearly establishes that the auto policy was an Idaho policy.[3] The automobile policy issued by ANPAC did not cover a manufactured home in Utah.

### IV.  THE COURT SHOULD NOT COVERT ANPAC'S 12(B)(6) MOTION TO DISMISS INTO A MOTION FOR SUMMARY JUDGMENT.

### A.  Plaintiffs must plead facts, not conclusory allegations, to survive a 12(b)(6) motion to dismiss.

A party may move to dismiss a complaint for failure to state a claim upon

---

[2] Exhibit B-1 attached to this brief is the same former declarations page—unredacted—that Telford attached to the FAC as Exhibit 5. ANPAC is not in possession of a declarations page that matches the document submitted by Telford as Exhibit 6 to the FAC. However, Exhibit B-2 attached to this brief is a copy of the automobile declaration page that shows that ANPAC covered all of the vehicles contained in Plaintiffs' Exhibits 5 and 6. There is a difference in the premium charged for the Honda Civic and the Jeep Grand Cherokee. However, for purposes of this motion to dismiss, ANPAC is not asking the Court to consider any premium charges (changes in premium occurred after ANPAC learned that the street address given by Telford in her application was incorrect). Instead, ANPAC only asks that the Court consider the vehicles covered by the automobile policy and the fact that the policy is an Idaho policy of insurance.

[3] In the bottom right-hand corner of Plaintiffs' Exhibit 5 is a notation referring to Declaration Section II of the declarations page. Telford did not attach that Declaration Section II.

which relief can be granted. Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss, courts look to the allegations in the complaint to determine whether they are sufficient to survive dismissal. *See Jones v. Bock*, 549 U.S. 199, 215 (2007). Although a complaint need not contain detailed factual allegations, Fed. R. Civ. P. 8 requires plaintiffs to do more than simply allege legal conclusions or recite the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 & n. 3 (2007). Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings. *See Ashcroft v. Iqbal,* 556 U.S. 662, 679, (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations"). The court also need not accept as true legal conclusions drawn by the complainant from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

**B.    The documents attached to this brief are not matters outside the pleadings.**

The Court can consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6), *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). Although a 12(b)(6) motion should be converted to a motion for summary judgment if "matters outside the pleading are presented to and not excluded by the court," "documents necessarily embraced by the complaint are not matters outside the pleading." Fed. R. Civ. P.

12(d);  *Zean v. Fairview Health Services,* 858 F.3d 520, 526 (8th Cir. 2017), citing *Enervations, Inc. v. Minn. Min. & MFG. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004).

If a document is referred to in a complaint and is central to the plaintiff's claim and the plaintiff does not incorporate by reference or attach the document to its complaint, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). "[C]onversion to summary judgment when a district court considers outside materials is to afford the plaintiff an opportunity to respond in kind. When a complaint refers to a document and the document is central to the plaintiff's claim, the plaintiff is obviously on notice of the documents contents, and this rationale for conversion to summary judgment dissipates." *Id.*

Although ANPAC is attaching exhibits to its brief, its 12(b)(6) motion to dismiss should not be converted to a summary judgment because ANPAC is not asking the court to consider matters outside of the Plaintiffs' pleading. Instead, ANPAC has attached copies of policy declaration pages that Plaintiffs' also attached to their pleading, but redacted to mislead the court about the nature of the coverage provided. [Exhibits A and B, Doc. 8 Exhibits 4, 5, 6]. ANPAC is also attaching an authorization signed by Telford allowing ANPAC to withdraw premium from her bank account. Plaintiffs admit that Telford signed the authorization and admit that ANPAC was authorized to withdraw funds, but, again in an effort to mislead the court, allege that authorization only permitted a specific amount to be withdrawn from her account when the actual document

does not list a specific amount and clearly states that premium may be increased. [Exhibit C; Doc. 8 ¶¶29, 30]. Telford is aware of all of these documents and their contents and refers to them in the FAC. [Doc. 8, ¶¶27, 28, 29, 30, Exhibits 4, 5, 6, 7]. The documents are dispositive of Telford's claims against ANPAC. As such, ANPAC is not asking the court to consider matters outside of the pleadings in its 12(b)(6) motion.

### V.  ALL OF PLAINTIFFS' CLAIMS SHOULD BE DISMISSED.

### A.  The complaint is long on legal conclusions but short on factual allegations.

Plaintiffs allege the following facts against ANPAC: (1) Telford obtained insurance through ANPAC, [Doc. 8, ¶¶27, 28], (2) Telford authorized ANPAC to deduct insurance premiums from her bank account [Doc. 8, ¶¶29, 30], (3) ANPAC overcharged Telford for insurance premium [Doc. 8, ¶¶32, 33, 38], (4) Telford complained to ANPAC but ANPAC did not correct the amount charged and covered up its overcharge by reducing the premium amount deducted from her bank account [Doc. 8, ¶34], (5) ANPAC failed to pay a vandalism claim on Telford's 1998 Honda Civic, [Doc. 8, ¶76], and (6) ANPAC was obligated to defended Telford against claims made by the OASIS defendants. [Doc. 8, ¶49].

Based on these sparse allegations, Telford then makes the following conclusory claims: (1) ANPAC aided and abetted the OASIS defendants in an illegal abandonment scheme [Doc. 8, ¶32], and (2) OASIS and ANPAC conspired to fraudulently strip Telford of her insurance coverage to properties the OASIS defendants planned on converting under unspecified abandonment laws so that ANPAC would not have any duty to defend Telford [Doc. 8, ¶ 37,49].

8

Neither the scant factual assertions nor the bald legal conclusions asserted by the Plaintiffs adequately plead any claim against ANPAC.

**B.      Plaintiff Noble has pled no facts connecting her with ANPAC.**

All of the facts pled in Plaintiffs' FAC relating to ANPAC deal with ANPAC's relationship with Telford. There is not a single fact linking any alleged action by ANPAC to any alleged injury suffered by Noble. According to the complaint, Noble was Telford's tenant on a property in Utah. [Doc. 8, ¶1]. There is no allegation (conclusory or otherwise) that ANPAC had insurance or other contractual relationship with Noble or drew any funds from any of Noble's financial accounts. The pleadings conclusively establish that ANPAC's policy of insurance covered an Idaho home built in 1976, not a manufactured home in Utah. Plaintiffs do not (nor can they) plead any facts, relating to any cause of action between Noble and ANPAC. Plaintiffs cannot state any plausible claim by Noble against ANPAC and all of Noble's causes of action against ANPAC should be dismissed.

**C.      ANPAC did not insure any property for Telford in Utah.**

ANPAC did not insure any property that is the subject of this lawsuit. Plaintiffs allege that Telford owned a manufactured home located in Utah. [Doc. 8, ¶1]. Plaintiffs allege that (1) the manufactured home was damaged due to the neglect of the OASIS defendants and the previous owner of the mobile home park, (2) the OASIS defendants, along with their counsel and the presiding judge in an eviction suit, wrongfully evicted Plaintiffs from the park and (3) the other defendants failed to compensate her for damages to her mobile home. [Doc. 8, see generally, ¶¶2-26].

According to the FAC, the manufactured home at issue in this matter is, or was at the times relevant to this suit, located in Utah. [Doc. 8, ¶1]. The only homeowners policy of insurance issued by ANPAC to Telford was for dwelling, built in 1976, and located in Idaho. [Exhibit A; Doc. 8, Exhibit 4]. ANPAC had no insurance related to the Utah property.

ANPAC also insured Telford under an automobile policy for a 1998 Honda Civic, a 1998 Jeep Grand Cherokee, and a 2001 travel trailer under Idaho automobile policies. [Exhibit B, Doc. 8, Exhibits 5 and 6]. The travel trailer insured by ANPAC is not the manufactured home in Utah. Plaintiffs claim that the travel trailer covered by ANPAC's auto policy is located on Telford's "South Dakota property," and is registered in South Dakota. [Doc. 8, ¶28, Exhibit 6].

Any claim based on ANPAC's alleged liability on the Utah manufactured home or any alleged duty to defend claims related to that Utah manufactured home—based purely on the pleadings submitted by Plaintiffs and ANPAC's clarification of Telford's misleading filings—cannot be sustained and must be dismissed.

**D.  Plaintiffs have failed to plead any facts giving rise to any RICO violation.**

The Racketeering Influenced and Corrupt Organizations Act is "intended to combat organized crime, not to provide a federal cause of action and treble damages to every tort plaintiff." *Oscar v. Univ. Students Coop. Ass'n*, 965 F.2d 783, 786 (9th Cir. 1992), *abrogated on other grounds by Diaz v. Gates*, 420 F.3 897 (9th Cir. 2005); *Craig Outdoor Advertising, Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1011, 1029 (8th Cir. 2008)("We have in the past rejected attempts to convert

ordinary civil disputes into RICO cases."). Plaintiffs, however, are attempting to use the RICO statute to reach claims, in this jurisdiction (since Plaintiff Telford has been declared a vexatious litigant in Utah and Idaho, where the events that make the basis of this lawsuit occurred), that they would not otherwise be able to sustain.

Plaintiffs have alleged both substantive (18 U.S.C. §1962(c) and conspiracy 18 U.S.C. §1692 (d)) violations of RICO. However, Plaintiffs fail to plead all of the elements of any RICO claim and, where they do touch upon an element, they merely recite conclusory allegations rather than provide any factual basis that could make the claim plausible. For those reasons, Plaintiffs RICO claims should be dismissed.

In order to maintain a cause of action for substantive violations of RICO under Section 1962(c), Plaintiffs must plead (1) the existence of an enterprise, (2) that the enterprise affected interstate commerce, (3) that the defendants were employed by or associated with the enterprise, (4) that the defendants participated in the conduct of the affairs of the enterprise, and (5) that the defendants participated through a pattern of racketeering activity. *United States v. Starrett,* 55 F.3d 1525, 1541 (11th Cir. 1995); *United HealthCare Corp. v. Amer. Trade Ins. Co.,* 88 F.3d 563 (8th Cir. 1996)(RICO plaintiff must allege existence of an enterprise, defendant's association with the enterprise, defendants participation in predicate acts of racketeering, and that defendants actions constitute a pattern of racketeering activity). To maintain an action for RICO conspiracy, Plaintiffs must plead that ANPAC entered into an agreement with the

11

other defendants to commit a substantive violation of RICO. *Oki Semiconductor Co. v. Wells Fargo Bank*, 298 F.3d 768, 774-75 (9th Cir. 2002). Additionally, Plaintiffs must plead facts sufficient to show that ANPAC "was aware of the essential nature and scope of the enterprise and intended to participate in it." *Howard v. Am. Online Inc.*, 208 F3d 741, 751 (9th Cir. 2000) (citing *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993)).

Here, Plaintiffs have failed to plead any facts demonstrating (1) the existence of an enterprise, (2) that ANPAC participated in the conduct of the affairs of the enterprise, (3) that ANPAC participated in any pattern of racketeering activity, (4) that ANPAC entered into an agreement with the other defendants to violate RICO, or that (5) ANPAC was aware of the nature and scope of the enterprise and intended to participate in it. Because Plaintiffs' pleadings fail to state any possible RICO claim against ANPAC, their cause of actions should be dismissed.

### 1. Plaintiffs failed to plead any facts demonstrating the existence of an enterprise or that ANPAC was associated with an enterprise.

In their FAC, the Plaintiffs baldly allege that ANPAC associated with the other defends to create a criminal enterprise. [Doc. 8, ¶41]. Plaintiffs, however, plead no facts to support the conclusory allegation. The existence of an enterprise is proven through evidence of an ongoing organization and evidence that the various associates function as a continuing unit. *Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 1992). The defendant must know the general nature of the enterprise and know that the enterprise extends beyond his

individual role. *United States v. Eufrasio*, 935 F.2d 553, 577 n. 29 (3rd Cir. 1991) citing *United Sates v. Rastelli*, 870 F.2d 822, 827-28 (2nd Cir.), *cert. denied*, 493 U.S. 982 (1989); *United States v. Christensen*, 801 F.3d 970, 985 (9th Cir. 2015). An association-in-fact enterprise "must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit [the] associates to pursue the enterprise's purpose." *Boyle v. United States*, 556, U.S. 938, 945-46 (2009).

Here, Plaintiffs fail to plead any facts demonstrating (1) the existence of an ongoing organization, (2) that ANPAC new the alleged nature of any enterprise and agreed to participate in it in any way, (3) that ANPAC had any relationship with any other defendant, or (4) that any the longevity of any purported relationships was sufficient to pursue any purported enterprise's purpose. Plaintiffs have not alleged any facts showing that ANPAC (1) was aware of the existence of any other named defendant, or (2) had any relationship with any other named defendant. Because Plaintiff did not, and cannot plausibly, articulate any facts supporting the existence of an enterprise, their RICO claims should be dismissed.

### 2. Plaintiffs have failed to plead any facts showing a pattern of racketeering activity.

Plaintiffs may allege a pattern of racketeering activity by stating facts that showing that various racketeering predicate acts were related "*and* that they amount to or pose a threat of continued criminal activity." *Lange v. Hocker,* 940

F.2d 359, 361 (8th Cir. 1991)(*quoting H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989))(emphasis in original). Continuity may be shown over a closed period of time by proving related predicate acts taking place over a substantial period of time. *Id.* Continuity may also be shown by establishing ongoing related predicate acts. "[A] single transaction which involves only one victim and takes place over a short period of time does not constitute the pattern of racketeering required for long-term criminal activity under a RICO claim." *Terry A. Lambert Plumbing, Inc. v. Western Security Bank*, 934 F.2d 976, 981 (8th Cir. 1991).

Plaintiffs have failed to plead any facts sufficient to establish the pattern element of their RICO claim. First, Plaintiffs' allege that the OASIS defendants became owners of the manufactured home park in Utah in June of 2017. [Doc. 8,¶9]. Plaintiffs complain about various acts between June of 2017 and November of 2017, when the OASIS defendants successfully acquired an eviction order against Plaintiffs related to the manufactured home in Utah. Five months is not sufficiently long enough to establish a pattern of racketeering activity. Racketeering acts comprising just a few months, with no threat of future criminal activity, do not give rise to a RICO claim.  *Id.*; *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 357 (8th Cir. 2011) *citing Primary Care Investors, Seven, Inc. v. PHP Healthcare Corp.*, 986 F.2d at 1215 (8th Cir. 1993) (seven months insufficient to constitute pattern of racketeering).

Plaintiffs do not complain that the alleged acts of the defendants are continuing in nature. Plaintiffs have been evicted from their property, the

automobile policy issued by ANPAC (which did not cover the manufactured home) has been cancelled, and the homeowner's policy issued by ANPAC for property located in Idaho is still in existence. All of the predicate acts complained about by Plaintiff have already occurred and there is no allegation that ANPAC or any other defendants will engage in any predicate acts in the future.

Because Plaintiffs have not pled facts to support a pattern of racketeering activity, their RICO claims should be dismissed.

**3.    Plaintiffs have failed to plead any facts establishing that ANPAC participated in any predicate acts.**

The only facts Plaintiffs allege against ANPAC are that ANPAC allegedly overcharged Plaintiff Telford for policy premium for approximately five months, that ANPAC wrongfully canceled her automobile policy (which did not cover the property at issue in this case), and that ANPAC failed to pay a claim related to vandalism of Telford's Honda Civic. None of those acts are criminal acts and none of them amount to predicate acts under RICO. Generally, RICO predicate acts include federal or state criminal acts punishable by one year or more in prison, or the violation of specified federal statutes. 18 U.S.C. §1961(1). Plaintiff has not alleged any facts showing that ANPAC's conduct in any way constitutes a violation of one of the named statutes.

**4.    Plaintiff's fail to plead any facts that would support a conspiracy claim against ANPAC.**

Although Plaintiffs allege, in conclusory fashion, that ANPAC conspired with the OASIS defendants and/or aided and abetted them in some fashion, Plaintiffs wholly fail to allege that ANAPC entered into an agreement with the

other defendants to violate RICO. Plaintiffs have not alleged any facts showing that ANPAC was aware of the existence of the OASIS defendants, what the relationship was between ANPAC and the other defendants, or how ANPAC entered into an agreement with them, specifically to violate RICO. Similarly, Plaintiffs have not pled any facts showing ANPAC was aware of the nature and scope of any enterprise or that it intended to participate in any enterprise.

Plaintiffs' RICO pleadings, while lengthy, are nothing more than conclusory allegations and citations to statutory language. Because Plaintiffs have pled no facts to support their RICO claims, those claims must be dismissed.

**D.    Plaintiffs' Electronic Funds Transfer Act claims against ANPAC should be dismissed.**

**1.    Any EFTA claims against ANPAC based on its status as a financial institution must be dismissed because ANPAC is not a financial institution under the EFTA.**

Plaintiffs' allege that ANPAC violated the Electronic Funds Transfer Act by overcharging Telford for insurance premiums and failing to timely correct that overcharge under the time frames and procedures set forth by the EFTA and its regulations.[4] [Doc. 8, ¶¶32, 34, 38, 39, 65]. However, Plaintiffs fail to state a claim under the EFTA because that statute only applies to financial institutions regarding the allegations made by Plaintiffs and ANPAC is not a financial institution for purposes of the Act.

---

[4] Plaintiffs also assert that ANPAC violated the EFTA by cancelling Telford's insurance policies without written consent and/or notice. There is no provision of the EFTA that covers insurance policies or the cancellation of policies.

16

The EFTA establishes the basic rights and responsibilities of consumers who use electronic fund transfer services and the financial institutions that offer those services. 12 C.F.R. 205.1(b). It imposes certain duties on both the consumer and the financial institution holding the consumer's account. The regulations implementing the Act are applicable, generally, to financial institutions. 12 C.F.R. 205.3(a). The EFTA defines "financial institution" as "a State or National bank, a State or Federal savings and loan association, a mutual savings bank, a State or Federal credit union, or any other person who, directly or indirectly, holds an account belonging to a consumer." 15 U.S.C. §1693a (9). Similarly, the regulations define "financial institution" as "a bank, savings association, credit union, or any other person that directly or indirectly holds an account belonging to a consumer, or that issues an access devise and agrees with the consumer to provide electronic fund transfer services." 12 C.F.R. §205.2(i).

As alleged by Plaintiffs, ANPAC is an insurance company, not a bank, savings association, or credit union.[5] [Doc. 8, ¶27]. Plaintiffs do not allege, nor can they, that ANPAC issued them an access to device to permit them to initiate electronic funds transfers.[6]

---

[5] Plaintiffs' allege that ANPAC is a financial institution under the Gramm, Leach, Bliley Act. However, the definition of "financial institution" under of Gramm, Leach, Bliley does not apply to the EFTA because the EFTA establishes its own definition of "financial institution."

[6] An access device is "a card, code, or other means of access to a consumer's account, or any combination thereof, that may be used by the consumer to initiate electronic fund transfers." 12 C.F.R. 205.2(a)(1). While Plaintiffs may allege that ANPAC provided Telford with access to statements regarding her insurance policies online, the facts as pled establish that funds were not transferred electronically online; instead, Telford permitted ANPAC to deduct policy premium directly from Telford's bank account. [Doc. 8, ¶30].

Similarly, ANPAC does not hold accounts for its insureds—nor do Plaintiffs allege that they had an account with ANPAC. The Act defines account as "a demand deposit, savings deposit, or other asset account. . . ." 15 U.S.C. §1693a(2). The regulations define "account" in substantially the same manner. 12 C.F.R. 205.2(b)(1). The Board of Governors of the Federal Reserve System (who issued the EFTA regulations), issued guidance about what qualifies as a covered account. Official staff interpretations establish that escrow accounts established to ensure the payment of insurance premiums are not accounts covered by the EFTA. Supplement I to Part 205—Official Staff Interpretations. If insurance premium escrow accounts are not "accounts" subject to the EFTA, then the direct payment of premium by an insured to an insurance company cannot be an "account" under the Act. The direct payment of premium is more akin to the payment of a bill (water, electric, etc.) that is made automatically and electronically every month than it is to an asset account. If the direct payment of bills (water, insurance, electric) establishes an "account" under the EFTA, then every entity involved in any electronic payment or transfer of funds would become a "financial institution." That is not the purpose of the EFTA. Because ANPAC does not maintain an asset account for the Plaintiffs, it is not a "financial institution" and Plaintiffs' purported causes of action under the EFTA should be dismissed for failure to state a claim.

**2. Any claim asserted by Plaintiffs' against ANPAC outside of its alleged capacity as a "financial institution" must also fail because ANPAC was authorized to withdraw premium from Telford's bank account.**

The regulations implementing the EFTA identify seven regulations applicable to persons other than financial institutions:  §205.3(b)(2) (dealing with a one-time electronic funds transfer based off of a check), §205.3(b)(3) (dealing with the collection of returned item fees), §205.10(b) (dealing with preauthorized electronic fund transfers authorized in writing by the consumer); §205.10(d) (notice of transfers in varying amounts), §205.10(e) (dealing with compulsory use of credit), §205.13 (dealing with administrative record retention requirements), and §205.20 (dealing with gift cards and give certificates). 12 C.F.R. 205.3(a).

The only section that could be applicable to Plaintiffs' claims is Section 205.10(b). That section states:

> *Written authorization for preauthorized transfers from consumer's account.* Preauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer.

Plaintiffs admit that Telford authorized ANPAC to withdraw premium for her homeowner's and automobile policies from her bank account. [Doc. 8, ¶29, 30]. There has been no allegation that Telford did not receive a copy of that authorization. Telford alleges that she only authorized a specific amount to be withdrawn from her account each month, but fails to attach any document showing that her authorization was limited in that way. In fact, the authorization signed by Telford does not provide for any specific amount to be withdrawn each month. [Exhibit C].[7] Instead, the withdrawal contract (which also acknowledges

---

[7] "In a case involving a contract, the court may examine the contract documents in deciding a motion to dismiss." *Zean v. Fairview Health Svcs*, 858 F.3d 520, 527 (8th Cir. 2017), *quoting Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003).

her receipt of the authorization), says that premium changes resulting in an increase of the withdrawal amount will occur after ANPAC provides notice to the consumer.[8] *Id.* at C-1,page 3. Because Telford admits to authorizing a withdrawal, and that authorization does not specify an amount certain to be withdrawn but instead contemplates increases in the withdrawal amount, Plaintiffs' claims that ANPAC withdrew funds without authorization in violation of EFTA must be dismissed.

**E.    Plaintiffs' state law claims should be dismissed.**

Plaintiffs assert South Dakota causes of action against ANPAC. However, those claims should be dismissed as Plaintiffs' federal question jurisdiction cannot be maintained under RICO or the EFTA and the court should decline to exercise supplemental jurisdiction over the state law claims. Additionally, Plaintiffs cannot maintain South Dakota causes of action related to Idaho policies of insurance.

**1.    The court should decline supplemental jurisdiction over Plaintiffs' state law claims.**

Plaintiffs' RICO and EFTA causes of action, which confer federal question jurisdiction on this court, must be dismissed, for the reasons discussed above, for failure to state a claim. When a court dismisses all claims over which it has original jurisdiction, the court may dismiss any supplemental state law claims. 28 U.S.C. §1367(c)(3).

---

[8] See also Exhibit 7 to Plaintiffs FAC which reminds Telford that her withdrawal amount could increase.

Here, Plaintiffs have brought suit against ANPAC under insurance policies issued in Idaho and insuring Idaho property. Plaintiffs claim that ANPAC overcharged Telford for the Idaho policies and failed to pay a claim related to vandalism of a covered vehicle that occurred in Utah. There is no connection between Plaintiffs' state law claims and South Dakota. Because of the lack of federal question jurisdiction and any connection between South Dakota and the matters complained about by Plaintiffs, the court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims.

**2.   South Dakota statutory law does not apply to ANPAC's policies.**

It is undisputed that ANPAC issued Idaho insurance policies, covering property located in Idaho, to Telford. To the extent that Plaintiffs' seek to pursue a cause of action under South Dakota's Insurance Code (Chapter 58 of South Dakota's Codified Laws) their claims must fail. Section 58-1-5 of the South Dakota Insurance Code states, "No person shall engage in or transact an insurance business **in South Dakota**, or act relative to a subject of insurance resident, **located or to be performed in South Dakota**, without complying with the provisions of this title." (Emphasis added). Section 58-33-2 of the South Dakota Insurance Code also states, "No person shall engage **in this state** in any trade practice which is defined in this chapter as...an unfair method of competition or an unfair or deceptive act or practices in the business of insurance." (Emphasis added). The South Dakota Insurance Code does not apply to Idaho policies of insurance, covering property located in Idaho,

concerning incidents that occurred in Idaho or Utah.[9]  As such, all of Plaintiffs'

statutory claims against ANPAC should be dismissed for failure to state claim.

**F.    ABSENT PLAINTIFFS' UNSUPPORTABLE RICO CLAIMS, VENUE IS IMPROPER IN THIS COURT.**

If Plaintiffs' RICO claims are dismissed, venue in this court is not proper.

The general venue statute is found at 28 U.S.C. §1391(b), it states a claim may

be brought in:

1. A judicial district in which any defendant resides, if all defendants are residents of the state in which the district is located;
2. A judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated;
3. If there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the courts personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

All of the acts complained of in Plaintiffs' complaint took place in Utah or

Idaho. Here venue is not proper and the case should be dismissed pursuant to

Fed. R. Civ. P. 12(b)(3). When venue is challenged the court must determine

whether the case falls within one of the three categories set out in §1391(b). If it

does, venue is proper; if it does not, venue is improper and the case must be

dismissed or transferred under §1406(a). *Atlantic Marine Construction Company,*

*Inc. v. United States District Court for the Western District of Texas*, 134 S.Ct. 568,

---

[9] Moreover, some statutes cited by Plaintiffs are wholly inapplicable to this matter. Plaintiffs complain that Telford was (allegedly) not provided with notice of certain events (amended policies, cancellation) by certified mail. Doc. 8, ¶72. Plaintiffs rely on SDCL 58-15-8.2 for the argument that Telford was entitled to notice by certified mail. However, that section of the Insurance Code only applies to "contracts of life insurance and annuities, other than reinsurance, group life insurance, and group annuities."  SDCL 58-15-1. Since the policies at issue in this case are property insurance policies, the cited statute is inapplicable.

577 (2013). The purpose of statutory venue is to help insure that a defendant is not brought to answer into some remote district having no real relationship to the dispute. *Woodkey v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995). With the exception of Larry Deiter, the Director of South Dakota Division of Insurance, none of the remaining defendants are residents of the State of South Dakota. Accordingly, subsection (1) cannot be satisfied because most of the defendants are not residence of South Dakota. As Plaintiffs' complaint makes clear in paragraph 2 [Doc. 8] only two of the defendants would be served in the State of South Dakota, accordingly the rest of them reside outside of the State of South Dakota.

Venue is also improper under 28 U.S.C. 1391(b)(2) because none of the events complained of in the Plaintiffs' FAC occurred in the State of South Dakota. Section 1391(b)(2) states that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." All of the Plaintiffs' claims arise in the State of Utah or Idaho. While Plaintiffs assert that Larry Deiter failed to investigate ANPAC's practices, that does not assert a private remedy. Undoubtedly, this action was not brought in Utah or Idaho based upon the filing restrictions placed upon Telford as discussed above. The last option for venue is 1391(b)(3) which states "if there is not district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with

respect to such action." The proper venue, if any, for this action would be in the district of Utah or Idaho.

## CONCLUSION

Plaintiffs' claims against ANPAC implausible and fail to state any actionable claim against ANPAC. Plaintiff Noble has made no allegations against ANPAC at all. Plaintiffs have not plead any facts to support any RICO claim against ANPAC, the provisions of the EFTA are not applicable to ANPAC, and Plaintiffs' state law claims consist of South Dakota causes of action over Idaho policies of insurance. For all of the foregoing reasons, ANAPC asks that his court dismiss Plaintiffs' First Amended Complaint for failure to state a claim.

*/s/ Gregory J. Sperlich*
Gregory J. Sperlich
DeMersseman Jensen
  Tellinghuisen & Huffman, LLP
*Attorneys for Defendant American National Property & Casualty Insurance Co.*
516 5th Street; PO Box 1820
Rapid City, SD 57709
(605) 342-2814
gjs@demjen.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 8th day of January, 2018, a true and correct copy of the foregoing *Notice of Special Appearance* was served electronically through the CM/ECF system on the following:

| | | |
|---|---|---|
| Holli Telford | [ ] | U.S. Mail |
| 885 US Hwy 385 | [ ] | Hand Delivery |
| Oelrichs, SD 57763 | [ ] | Facsimile |
| hollietelford.1@gmail.com | [ ] | Overnight Delivery |
| | [x] | Electronic Case Filing |

| | | |
|---|---|---|
| Rebecca L. Mann | [ ] | U.S. Mail |
| rmann@gpna.com | [ ] | Hand Delivery |
| *Attorney for Defendants Boardwalk* | [ ] | Facsimile |
| *Property Management Co., Kevin West,* | [ ] | Overnight Delivery |
| *Austin Cales, David Parker, Lehi Oasis,* | [x] | Electronic Case Filing |
| *LLC, Robert J. Poulsen and Poulsen &* | | |
| *Skousen* | | |

| | | |
|---|---|---|
| | [ ] | U.S. Mail |
| Darin B. Goff | [ ] | Hand Delivery |
| Assistant Utah Attorney General | [ ] | Facsimile |
| dgoff@agutah.gov | [ ] | Overnight Delivery |
| *Attorney for Jared Eldrige* | [x] | Electronic Case Filing |

| | | |
|---|---|---|
| | [ ] | U.S. Mail |
| Richard M. Williams | [ ] | Hand Delivery |
| Attorney General of South Dakota | [ ] | Facsimile |
| rich.williams@state.sd.us | [ ] | Overnight Delivery |
| *Attorney for Jared Eldrige* | [x] | Electronic Case Filing |

and on January 8, 2018 served via U.S. Mail, first class, postage prepaid upon the following:

Marty Noble
885 US Hwy 385
Oelrichs, SD 57763

*/s/ Gregory J. Sperlich*
Gregory J. Sperlich