| | |
|---|---|
| MARTY NOBLE and HOLLI TELFORD,<br><br>Plaintiffs,<br><br>vs.<br><br>AMERICAN NATIONAL PROPERTY &<br>CASUALTY INSURANCE CO;<br>BOARDWALK PROPERTY<br>MANAGEMENT CO.; KEVIN WEST;<br>LEHI OASIS, LLC; DAVID L PARKER;<br>AUSTIN B. CALES; JARED ELDRIGE<br>in his official capacity; LARRY DEITER<br>in his official capacity as Director for<br>the Division of Insurance for the state<br>of South Dakota; ROBERT J.<br>POULSEN and POULSEN & SKOUSEN,<br><br>Defendants. | CIV. 17-5088-JLV<br><br><br><br><br>ORDER |

## INTRODUCTION

Plaintiffs Holli Telford and Marty Noble, appearing *pro se*, filed this action against the defendants. (Docket 8). The verified amended complaint includes wide-ranging allegations, and plaintiffs contend a variety of federal and state laws support their case. Id. All defendants filed motions to dismiss. Defendant Jared Eldridge ("Judge Eldridge"), a Utah state court judge, submitted a motion to dismiss based on Rules 12(b)(1), (4) & (6) of the Federal Rules of Civil Procedure. (Docket 39). Defendant American National Property & Casualty Insurance Co. ("ANPC") moved to dismiss under Rule 12(b)(6). (Docket 41). Defendants Boardwalk Property Management Company, Kevin

West, Austin Cales, David Park, Lehi Oassi LLC, Robert J. Poulsen and Poulsen & Skousen ("Boardwalk defendants") filed a motion to dismiss based on Rules 12(b)(2) & (6). (Docket 43). Defendant Larry Deiter, Director for the South Dakota Division of Insurance, ("Director Deiter"), moved to dismiss the claims against him via Rules 12(b)(1) & (6). (Docket 72). Several filings from plaintiffs and defendants relate to service and entries of default. See, e.g., Dockets 31, 37 & 53. Plaintiffs filed various motions in response to defendants' filings. (Dockets 37, 48, 62 & 67). The court evaluates each pending matter in turn before addressing other issues.

## LEGAL STANDARDS

"In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993) (internal citation omitted). "In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion [to dismiss] is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." Id. (internal citation omitted). "Jurisdictional issues, whether they involve questions of law or of fact, are for the court to decide." Osborn v. United States, 918 F.2d 724, 729 (8th Cir. 1990). "A plaintiff has the burden of establishing subject matter jurisdiction." Jones v. Gable, 470 F.3d 1262, 1265 (8th Cir. 2006).

Under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Two "working principles" underlie Rule 12(b)(6) analysis. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). First, courts are not required to accept as true legal conclusions "couched as . . . factual allegation[s]" in the complaint. See id. "[A] complaint must allege 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" Torti v. Hoag, 868 F.3d 666, 671 (8th Cir. 2017) (quoting Twombly, 550 U.S. at 555). The court does, however, "take the plaintiff's factual allegations as true." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009). Second, the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 678 (citation omitted). The complaint is analyzed "as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Braden, 588 F.3d at 594. The court "will not mine a lengthy complaint searching for nuggets that might refute obvious pleading deficiencies." Neubauer v. FedEx Corp., 849 F.3d 400, 404 (8th Cir. 2017) (internal alterations and quotation marks omitted).

In applying these principles, the court must construe plaintiff's *pro se* complaint liberally. See Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004). This means "that if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the

complaint in a way that permits the layperson's claim to be considered within the proper legal framework." <u>Jackson v. Nixon</u>, 747 F.3d 537, 544 (8th Cir. 2014) (internal quotation marks omitted). The complaint "still must allege sufficient facts to support the claims advanced." <u>Stone</u>, 364 F.3d at 914.

## BACKGROUND

The amended complaint provides an array of legal foundations. (Docket 8 at pp. 17-36). Those include:

- Racketeering Influenced and Corrupt Organizations Act ("RICO");
- Fair Housing Act ("FHA");
- Electronic Funds Transfers Act ("EFTA");
- Fair Credit Reporting Act ("FCRA");
- <u>Ex parte Young</u>, 209 U.S. 123 (1908);
- conspiracy to violate 42 U.S.C. § 1983;
- covenant of good faith and fair dealing;
- covenant of quiet enjoyment;
- deceit;
- conversion;
- trespass;
- abuse of process; and
- unjust enrichment.

<u>Id.</u>

The first half of the amended complaint features the majority of plaintiffs' factual assertions. <u>Id.</u> at pp. 1-17. There are also legal conclusions throughout the first half. <u>Id.</u> The following recitation is not the court's findings; it is an account of most of the factual assertions in the amended

complaint set forth here for the purpose of ruling on defendants' motions. Quoted portions of the amended complaint are included where helpful for capturing plaintiffs' allegations.

The court notes the facts of this case share many similarities with an action Ms. Telford brought in the Central Division of the United States District Court for the District of South Dakota. See Telford v. Dep't of Hous. & Urban Dev., No. 3:16-CV-03033, 2017 WL 1653305, at *1-4 (D.S.D. May 1, 2017). The Central Division case made "various claims against multiple defendants relating to eviction from a trailer home park in Green River, Wyoming; relating to litigation concerning the eviction in Wyoming state and federal court; relating to alleged deprivation of certain telecommunication services in Wyoming; and relating to communication with the United States Department of Housing and Urban Development (HUD) and at least one of its employees regarding their Wyoming housing situation." Id.

Turning to this case, plaintiff Telford entered into a rental contract with plaintiff Noble for Noble to reside in a mobile home located in Utah. (Docket 8 at p. 3). Noble is allegedly disabled. Id. The plaintiffs also entered into a rental contract with the owner of the mobile home park. Id. at p. 4. Part of the contract between plaintiffs and the park owner made the owner "responsible for yard care and outside maintenance activities given the tenants [sic] disabilities of brain injury, attendant seizures, and because the tenant was crippled and

therefore mobility challenged." Id. A "weed tree problem" within the mobile home park developed. Id.

Eventually, this problem made it difficult for Noble to access the mobile home. Id. at p. 5. Telford sought payment from the park owner based on the tree problem. Id. at pp. 5-6. The park owner refused to pay Telford or fix the tree problem as she requested. Id. at p. 6. Plaintiffs unsuccessfully sought payment and solutions to the tree problem from parties the amended complaint refers to as "the OASIS defendants[.]" Id. at pp. 6-7.

"[T]he owners" then made Noble's lease a month-to-month arrangement and posted an eviction notice on the mobile home. Id. at pp. 7-8. Defendant Boardwalk Property Management Co. notified Telford "by text" of the forthcoming eviction action. Id. at p. 8. Plaintiffs allege the eviction notice failed to meet certain legal requirements. Id. Defendants Mr. Poulsen and Poulsen & Skousen were part of the legal team representing the parties evicting plaintiffs. Id. at pp. 9-10.

An eviction action proceeded in Utah state court before Judge Eldridge. Id. at p. 10. Plaintiffs claim the opposing legal representatives lied about Telford's history of rent payments and failed to serve plaintiffs with summary judgment filings. Id. at pp. 10-11. According to plaintiffs, Judge Eldridge conspired against them and granted summary judgment for the opposing side. Id. at pp. 11-12.

The amended complaint then switches gears and begins discussing interactions between Telford and ANPC. Id. at p. 13. In March and April of 2017, Telford obtained home and auto insurance from ANPC. Id. Telford set up her policy with ANPC so it automatically withdrew payments from her bank account. Id. at p. 14. Telford alleges ANPC overcharged her in violation of the EFTA. Id. at pp. 14-15.

In July 2017, Telford visited Noble's home in Utah and learned the tree problem had progressed, causing water line issues, damage to the home's interior and black mold. Id. at p. 15. Telford "alleges that at some time between [her] visit to the OASIS' property in July of 2017 and when OASIS posted their lease termination notice on [Noble's] dwelling's door, that OASIS and her agents conspired with [ANPC] and her agents, to fraudulently strip [Telford] of insurance coverage to properties the OASIS' [sic] defendants planned on converting under the abandonment laws." Id. at p. 16. According to Telford, ANPC canceled her auto insurance policy in violation of EFTA and engaged in fraudulent actions with respect to her insurance for her home. Id. Telford asserts she attempted to contact Director Deiter about investigating ANPC's fraud, but no investigation has occurred. Id. at p. 17.

So plaintiffs filed this lawsuit.

**DISCUSSION**

## I. Plaintiffs' causes of action

### A. Federal

Plaintiffs allege RICO violations. (Docket 8 at pp. 17-25). RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). "In order to demonstrate a violation of this section, therefore, a plaintiff must establish (1) the existence of an enterprise; (2) defendant's association with the enterprise; (3) defendant's participation in predicate acts of racketeering; and (4) defendant's actions constitute a pattern of racketeering activity. In addition, the plaintiff must demonstrate that he has been injured in his business or property by the conduct constituting the violation, a requirement equivalent to a showing of proximate causation and damages." United HealthCare Corp. v. Am. Trade Ins. Co., Ltd., 88 F.3d 563, 570 (8th Cir. 1996) (internal citations and quotation marks omitted).

Plaintiffs also cite to § 1962(d), which proscribes any person from conspiring to violate section 1962(c). 18 U.S.C. § 1962(d). To prove conspiracy "plaintiffs must not only prove the elements of a RICO violation but also that [defendants] objectively manifested an agreement to participate . . . in the

8

affairs of the enterprise." Rosemann v. St. Louis Bank, 858 F.3d 488, 500 (8th Cir. 2017) (internal alterations and quotation marks omitted).

To advance their FHA claim based on disability, plaintiffs must meet their burden and establish a prima facie case that they were discriminated against on the basis of a disability. The court would evaluate "whether defendants discriminated against [plaintiffs] by refusing to accommodate [their disability.]" Radecki v. Joura, 114 F.3d 115, 117 (8th Cir. 1997) (per curium) (citing 42 U.S.C. § 3604(f)(3)(B)). In Radecki v. Joura, the plaintiff grounded his FHA discrimination claim in his disability. See id. at 116 ("Radecki had informed defendants twice before August 16 that he was 'ill' and 'it was long term,' but had not mentioned the nature of his illness; and that Radecki asserted he or his attorney told defendants of his disability sometime after August 16."). "The [district] court set forth the following prima facie case which Radecki had the burden of proving: a) he was a member of a class protected under the FHA; b) defendants were aware of Radecki's membership in that class; c) Radecki was willing and qualified to continue renting his apartment; and d) defendants refused to permit Radecki to continue to rent the apartment." Id. Based on the facts alleged in plaintiffs' amended complaint, they would need to establish a similar prima facie case of discrimination by a preponderance of the evidence.

Plaintiffs claim violations of the EFTA. (Docket 8 at p. 29). "EFTA provides a 'basic framework establishing the rights, liabilities, and

responsibilities of participants' in electronic banking and its primary objective 'is the provision of individual consumer rights.' " <u>Cobb v. PayLease LLC</u>, 34 F. Supp. 3d 976, 980 (D. Minn. 2014) (quoting 15 U.S.C. § 1693(b)).  Under the EFTA, the Board of Governors of the Federal Reserve System ("the Board") issues rules to advance the EFTA's purposes and "prevent circumvention or evasion thereof, or to facilitate compliance therewith."  15 U.S.C. § 1693b; <u>see</u> 12 C.F.R. § 205.1.  The Board has promulgated rules related to issuance of access devices, preauthorized transfers and many other areas.  <u>See</u> 12 C.F.R. §§ 205.5 & 205.10.  "With respect to remedies for violations, EFTA provides that 'any person who fails to comply with any provision of this subchapter with respect to any consumer . . . is liable to such consumer.' " <u>Cobb</u>, 34 F. Supp. 3d at 980 (quoting 15 U.S.C. § 1693m(a)).

Next, plaintiffs assert violations of the FCRA.  (Docket 8 at p. 29).  In <u>Spokeo, Inc. v. Robins</u>, 136 S. Ct. 1540 (2016), the United States Supreme Court explained the background of the FCRA:

> The FCRA seeks to ensure "fair and accurate credit reporting."
> § 1681(a)(1).  To achieve this end, the Act regulates the creation
> and the use of "consumer report[s][1] by "consumer reporting

---

[1]"The Act defines the term 'consumer report' as: 'any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for—
(A) credit or insurance to be used primarily for personal, family, or household purposes;
(B) employment purposes; or
(C) any other purpose authorized under section 1681b of this title.'
15 U.S.C. § 1681a(d)(1)."

agenc[ies]"[2] for certain specified purposes, including credit transactions, insurance, licensing, consumer-initiated business transactions, and employment. See §§ 1681a(d)(1)(A)-(C); § 1681b. . . . [T]he FCRA applies to companies that regularly disseminate information bearing on an individual's "credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living." § 1681a(d)(1).

The FCRA imposes a host of requirements concerning the creation and use of consumer reports. . . . [T]he Act requires consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of" consumer reports, § 1681e(b); to notify providers and users of consumer information of their responsibilities under the Act, § 1681e(d); to limit the circumstances in which such agencies provide consumer reports "for employment purposes," § 1681b(b)(1); and to post toll-free numbers for consumers to request reports, § 1681j(a).

Id. at 1545.

Plaintiffs contend they can bring claims based on the doctrine established in Ex parte Young, 209 U.S. 123 (1908). (Docket 8 at pp. 30-31). "The Eleventh Amendment generally bars suits by private citizens against a state in federal court. However, state officers who 'are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings . . . to enforce . . . an unconstitutional act . . . may be enjoined . . . from such action." Balogh v. Lombardi, 816 F.3d 536, 544 (8th Cir. 2016) (quoting Ex parte Young, 209 U.S. at 155-56) (internal citation omitted).

---

[2] " 'The term 'consumer reporting agency' means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.' § 1681a(f)."

11

Finally, plaintiffs assert a conspiracy to violate their civil rights. (Docket 8 at pp. 31-32). "In order to prove the existence of a civil rights conspiracy under § 1985(3), [plaintiffs] must prove: (1) that the defendants did 'conspire,' (2) 'for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or equal privileges and immunities under the laws,' (3) that one or more of the conspirators did, or caused to be done, 'any act in furtherance of the object of the conspiracy,' and (4) that another person was 'injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States.'" Larson by Larson v. Miller, 76 F.3d 1446, 1454 (8th Cir. 1996) (quoting 42 U.S.C. § 1985(3)).

**B. State**

Plaintiffs' first state law claim is a breach of the covenant of good faith and fair dealing. (Docket 8 at pp. 32-33). Under South Dakota law, "every contract contains an implied covenant of good faith and fair dealing which prohibits either contracting party from preventing or injuring the other party's right to receive the agreed benefits of the contract." Farm Credit Servs. of Am. v. Dougan, 704 N.W.2d 24, 28 (S.D. 2005) (internal alterations and quotation marks omitted).

The South Dakota Supreme Court analyzed the covenant of quiet enjoyment, plaintiffs' next state law claim, in Carr v. Benike, Inc., 365 N.W.2d 4, 5 (S.D. 1985). In Carr, a lease stated "that 'lessor covenants that the lessee,

upon paying the rents and performing the covenants of this lease, shall peacefully and quietly have, hold and enjoy the rented premises for the term of this Lease.'" Id. (internal alteration omitted). The Carr court determined "[t]his statement constitutes an express covenant of quiet enjoyment[,]" and that "[t]he legal implication of the covenant, express or implied, is that the lessor will permit the tenant to enjoy fully the demised premises subject to any rights reserved to the lessor." Id. (internal quotation marks omitted).

Plaintiffs' next cause of action is deceit, which requires them show a "representation made as a statement of fact, which is untrue and intentionally or recklessly made 1. [w]ith intent to deceive for the purpose of inducing the other party to act upon it; 2. [r]eliance upon the untrue statement of fact; 3. [r]esulting in injury or damage." N. Am Truck & Trailer, Inc. v. M.C.I. Comm. Servs., Inc., 751 N.W.2d 710, 714 (S.D. 2008).

Plaintiffs allege conversion and trespass within the same cause of action. (Docket 8 at p. 35). Under South Dakota law, a plaintiff alleging conversion must demonstrate: "(1) [plaintiff] owned or had a possessory interest in the property; (2) [plaintiff's] interest in the property was greater than the [defendant's]; (3) [defendant] exercised dominion or control over or seriously interfered with [plaintiff's] interest in the property; and (4) such conduct deprived [plaintiff] of its interest in the property." W. Consol. Co-op. v. Pew, 795 N.W.2d 390, 397 (S.D. 2011). "[T]he elements of the tort of civil trespass . . . require only that: One who intentionally and without a consensual or other

privilege (a) enters land in possession of another or any part thereof or causes a thing or third person so to do, or (b) remains thereon is liable as a trespasser to the other irrespective of whether harm is thereby caused to any of his legally protected interests." <u>Benson v. State</u>, 710 N.W.2d 131, 159 (S.D. 2006).

Next, plaintiffs claim abuse of process. (Docket 8 at p. 35). The South Dakota Supreme Court adopted the following definition for abuse of process: "One who uses a legal process whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process." <u>Miessner v. All Dakota Ins. Assocs., Inc.</u>, 515 N.W.2d 198, 204 (S.D. 1994). "Some act or threat directed to an immediate objective not legitimate in the use of the process is required, and the defendant is not liable if he has done no more than carry the process to its authorized conclusion, even with bad intentions." <u>Id.</u>

Plaintiffs' final cause of action is unjust enrichment. (Docket 8 at pp. 35-36). "In order to establish unjust enrichment, three elements must be proven: (1) a benefit was received; (2) the recipient was cognizant of that benefit; and (3) the retention of the benefit without reimbursement would unjustly enrich the recipient." <u>Mack v. Mack</u>, 613 N.W.2d 64, 69 (S.D. 2000).

## II. Defendants' motions

As the court noted above, all defendants filed motions to dismiss. Rule 12(b)(6) is a basis for dismissal in each motion. Because the court finds dismissal under Rule 12(b)(6) is justified for every defendant, it will not address

14

all avenues for dismissing the amended complaint. Where applicable, the court notes Rule 12(b)(1) as an additional ground for dismissal.

Earlier in this case, the Clerk of Court entered default against ANPC. (Docket 29). ANPC moved to set aside the default entry. (Docket 31). Plaintiffs resisted ANPC's motion to set aside. (Docket 37). "The court may set aside an entry of default for good cause . . . ." Fed. R. Civ. P. 55(c). "When examining whether good cause exists, the district court should weigh 'whether the conduct of the defaulting party was blameworthy or culpable, whether the defaulting party has a meritorious defense, and whether the other party would be prejudiced if the default were excused.' " Stephenson v. El-Batrawi, 524 F.3d 907, 912 (8th Cir. 2008) (citing Johnson v. Dayton Elec. Mfg. Co., 140 F.3d 781, 784 (8th Cir. 1998)). As the court explains below, ANPC has a meritorious defense based on its Rule 12(b)(6) motion to dismiss for failure to state a claim. Under Rule 55(c), ANPC provided sufficient evidence of a meritorious defense, and the court sets aside the entry of default against ANPC. See Johnson, 140 F.3d at 785 ("[T]he issue is whether the proffered evidence would permit a finding for the defaulting party, not whether it is undisputed.") (internal quotation marks omitted); Hayek v. Big Brothers/Big Sisters of Am., 198 F.R.D. 518, 524 (N.D. Iowa 2001) (finding a Rule 12(b)(6) defense may justify setting aside an entry of default). As a result, the court denies plaintiffs' corresponding motion to strike ANPC's motion to set aside default entry and the notice of appearance of ANPC's attorney. (Docket 37).

In response to defendants' motions, plaintiffs submitted filings including numerous factual assertions beyond those alleged in the amended complaint. See, e.g., Dockets 48, 67 & 76. The additional facts in plaintiffs' responses are not properly before the court and the court will not consider them in ruling on defendants' motions. See Fischer v. Minneapolis Pub. Sch., 792 F.3d 985, 990 n.4 (8th Cir. 2015); Morgan Distrib. Co., Inc. v. Unidynamic Corp., 868 F.2d 992, 995 (8th Cir. 1989) ("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss."); Midland Farms, LLC v. U.S. Dep't of Agric., 35 F. Supp. 3d 1056, 1066 (D.S.D. 2014) ("Midland may not amend its Complaint through an argument raised in a brief in opposition to a motion to dismiss.") (collecting cases).[3]

Considering the assertions in the amended complaint, the applicable law on plaintiffs' causes of action and the Rule 12(b)(6) standard, the court finds it must grant defendants' motions. (Dockets 39, 41, 43 & 72). Consequently, the court denies plaintiffs' corresponding cross-motions and motions to strike on

---

[3]Tucked within a recent notice plaintiffs filed, they state, "Plaintiffs seek to amend the complaint to conform to the evidence as soon as this court ends a default judgment against ANPAC herein for among other reasons, forging part of an easy pay contract to avoid litigation of Plaintiffs [sic] claims against this defendant." (Docket 77 at p. 2). To the extent this is a legitimate motion to amend the complaint, the court denies it. It violates D.S.D. Civ. LR 15.1, which requires "any party moving to amend a pleading [to] attach a copy of the proposed amended pleading to its motion to amend with the proposed changes highlighted or underlined so that they may be easily identified." The court finds the amendment also would not meet Rule 15(a) because it would be futile and cause undue delay. See Fed. R. Civ. P. 15(a); see also Hammer v. City of Osage Beach, 318 F.3d 832, 844 (8th Cir. 2003) (stating a motion to amend may be denied based on futility or undue delay).

the same matters. (Dockets 48 & 67). The court comes to this conclusion after "accepting as true all factual allegations in the [amended] complaint and drawing all reasonable inferences in favor of the nonmoving party." Torti, 868 F.3d at 671 (internal quotation marks omitted).

The majority of the amended complaint is citations to legal authority, legal conclusions and vague references to parties. (Docket 8). The court culled the amended complaint for factual assertions and liberally construes the legal framework for plaintiffs' causes of action, and the court fails to find a claim against a defendant containing "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " In re Pre-Filled Propane Tank Antitrust Litig., 860 F.3d 1059, 1063 (8th Cir. 2017) (en banc) (quoting Iqbal, 556 U.S. at 678). The amended complaint "tenders naked assertions devoid of further factual enhancement." Id. (internal quotation marks and alterations omitted). It is not the responsibility of the court to "mine [plaintiff's] lengthy complaint . . . for nuggets that might refute obvious pleading deficiencies." Neubauer, 849 F.3d at 404 (internal alterations and quotation marks omitted).

Plaintiffs' amended complaint includes many lengthy citations, but it fails to sufficiently fit the facts of any defendant's conduct under a claim based on those citations. Although the amended complaint features wide-ranging allegations, the facts advanced fall short of stating a plausible RICO claim. The amended complaint's facts fail to establish a prima facie case under the FHA.

17

Plaintiffs do not demonstrate that ANPC is a "financial institution" under the EFTA or otherwise articulate an EFTA claim. (Docket 42 at pp. 16-20). Other than bald assertions, plaintiffs' FCRA claim does not point to a "consumer report" produced by a "consumer reporting agency." <u>See</u> <u>Spokeo</u>, 136 S. Ct. at 1545 (citing 15 U.S.C. § 1681a). No plausible FCRA claim is pled. The amended complaint alleges insufficient factual matter to support the elements of a civil rights conspiracy under § 1985(3). <u>See</u> <u>Larson</u>, 76 F.3d at 1454 (citing 42 U.S.C. § 1985(3)).

Although plaintiffs dispute Judge Eldridge's rulings, the record shows they sued Judge Eldridge based on judicial actions in a case where his court had jurisdiction. Judicial immunity is an additional Rule 12(b)(6) ground for dismissing plaintiffs' claims against Judge Eldridge. <u>See</u> <u>Penn v. United States</u>, 335 F.3d 786, 789 (8th Cir. 2003) ("A judge is entitled to absolute immunity for all judicial actions that are not taken in complete absence of all jurisdiction.") (internal quotation marks omitted); <u>cf.</u> <u>Telford</u>, 2017 WL 1653305, at *8. Because the amended complaint fails to adequately state a claim under the <u>Ex parte Young</u> doctrine, those claims against Judge Eldridge and Director Deiter are also dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.

The court set forth the applicable law on plaintiffs' state law claims. <u>See</u> <u>supra</u> Section I.B at pp. 12-14. The amended complaint does not adequately establish the facts necessary to make any of those claims plausible. Plaintiffs' amended complaint is especially deficient as to its deceit claim, which the court

must evaluate under the heightened standard of Rule 9(b).  See Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); <u>Kozlowski v. Palmquist</u>, No. CIV. 12-4174, 2013 WL 4552786, at *7 (D.S.D. Aug. 28, 2013) (applying Rule 9(b) to a South Dakota law deceit claim).

The court grants defendants' motions.

## III.  Holli Telford the litigant

As a litigant, plaintiff Holli Telford has a reputation that precedes her. <u>See, e.g.</u>, <u>Nelson v. Mountain W. Farm Burea Mut. Ins. Co.</u>, 209 F. Supp. 3d 1130 (D. Neb. 2016).  She "is known for filing abusive, vexatious and frivolous actions and pleadings throughout this nation and even in the Supreme Court of the United States."  <u>Id.</u> at 1131.  She uses aliases.  <u>See</u> <u>Lundahl v. Nar Inc.</u>, 434 F. Supp. 2d 855, 860 n.2 (D. Idaho 2006) ("Plaintiff has employed numerous aliases in her past litigation including, but not limited to, H.M. Telford, M.H. Telford, Marti Telford, Holli Lundahl, H. Lundahl, H.T. Lundahl, Marti Lundahl, and Holly Mattie Telford.").[4]  The following courts imposed filing restrictions on her based on her litigation tactics: the United States Supreme Court; the United States Courts of Appeals of the Ninth and Tenth Circuits; and the United States District Courts for the District of Utah, Western District

---

[4]Based on a review of Ms. Telford's attempted manipulation of courts, the court has sufficient reason to believe the other plaintiff in this case, Marty Noble, is either an alias of Ms. Telford or an agent acting at her direction.

of Texas, District of Idaho and District of Nebraska.  See Nelson, 209 F. Supp. 3d at 1132-35 (collecting cases).

Ms. Telford's approach to litigation in this case and the others cited above is plainly inconsistent with the requirement that the Federal Rules of Civil Procedure "be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.  In this case, she put her abusive strategies on full display.  For example, she submitted filings seeking an order from this court invalidating the filing restrictions imposed on her in the District of Utah.  (Dockets 78 & 79).  One of the submissions has 25 exhibits, totaling 74 pages.  (Docket 78).  The court denies the request and motion.  (Dockets 78 & 79).  The court takes judicial notice of the valid order restricting Ms. Telford's filings in the District of Utah.  See Fed. R. Evid. 201.  The order is attached as Exhibit A.  Although nearly all the alleged conduct giving rise to this case occurred in Utah, it is clear Ms. Telford filed in the District of South Dakota to circumvent filing restrictions.  She did the same thing in Telford, 2017 WL 1653305, at *1-6 (filing in South Dakota to avoid restrictions in the District of Wyoming).

The court is aware of five cases Ms. Telford has filed in the District of South Dakota.  Including this case, three in the Western Division.  See Telford v. Bradeen, CIV. 17-5042; Lundahl v. JP Morgan Chase Bank, CIV. 17-5069.  And one in both the Central and Northern Divisions.  See Telford, 2017 WL

1653305, at *1; <u>Lundahl v. Roberts</u>, CIV. 17-1029.  A "Logan Lundahl" is the lone plaintiff in the Northern Division case, but in his request to file documents electronically, he claims an address that is the same as Ms. Telford's in this case and others.  <u>See</u> CIV. 17-1029, Docket 4 at p. 1.  Logan Lundahl's verified complaint closely resembles Ms. Telford's complaints, and the end of his complaint states it was sworn to a notary public "by Holli Telford and Logan Lundahl[.]"  CIV. 17-1029, Docket 1 at p. 22.  The complaint was notarized by a notary public with a familiar name: Marti Telford.  <u>Id.</u> at p. 22; <u>see</u> <u>Nar Inc.</u>, 434 F. Supp. 2d at 860 n.2 ("Plaintiff has employed numerous aliases in her past litigation including, but not limited to . . .  Marti Telford[.]").[5]

One of the Western Division cases was assigned to the Honorable Lawrence L. Piersol.  CIV. 17-5069.  Both plaintiffs, Logan Lundahl and Holli Lundahl, claim their residence is the same as Ms. Telford in this case: 855 United States Highway 385, Olerichs, South Dakota, 57765.  <u>Id.</u>  Judge Piersol noted that the Honorable Roberto A. Lange, the District Judge in Ms. Telford's Central Division case, "expressed concern that Ms. [Telford] did not actually reside in South Dakota at the 855 U.S. Highway 385, Oelrichs address, because a [South Dakota Department of Criminal Investigation] agent investigating for the federal defendants found this address to be a vacant

---

[5]While not a party to this case, Marti Telford filed a declaration under oath claiming Marti Telford and Holli Telford are not the same person.  (Docket 87).

lot."[6]  CIV. 17-5069, Docket 10 at p. 2.  Consequently, Judge Piersol

determined "doubt [was] cast upon the residency status of both plaintiffs, [and

stated] the court [was] concerned by a potential fraud on to the court."  Id.

Judge Piersol ordered the plaintiffs in that case to "demonstrate proof of

residency by filing two utility bills within thirty (30) days of [the] order."  Id.

The utility bills are due March 9, 2018.  Ms. Telford's cases in the District of

South Dakota have either borne out her abusive litigation strategy, see CIV. 17-

5088, and Telford, 2017 WL 1653305, at *1, or they have the promise of doing

so.[7]

But the concerns about Ms. Telford and her alleged residency do not stop

there.  In Ms. Telford's recent case in the District of Nebraska, the Honorable

Richard G. Kopf developed suspicion that Ms. Telford was engaging in fraud on

the court.  See Nelson, 209 F. Supp. 3d at 1131-32.  Judge Kopf ordered Ms.

Telford, other parties and attorneys in the case to appear in court for a hearing.

8:16CV368, Docket 17.  The hearing occurred on September 19, 2016.

8:16CV368, Docket 44.  Judge Kopf placed Ms. Telford under oath and

inquired about her residency:

---

[6]The agent was Dane Rasmussen, a named defendant in one of Ms.
Telford's other Western Division cases.  CIV. 16-3033, Docket 93; CIV. 17-
5042, Docket 1.

[7]On February 21, 2018, the Honorable Charles B. Kornmann, the judge
presiding over Ms. Telford's Northern Division case, denied her motion to
proceed in forma pauperis.  CIV. 17-1029, Docket 5.  Judge Kornmann
indicated he has "serious concerns about the claimed residency" in the case.
Id. at p. 6.  Judge Kornmann also ordered the production of utility bills.  Id.

- The court: Where do you reside, ma'am?

- Ms. Telford: I reside both at the Pine address and I also reside with my sister who is in Green River, Wyoming, close to a cancer hospital, so I go between both locations.

- The court: First of all, with regard to the first address, tell me what that address is.

- Ms. Telford: That address is the address or domicile of Shanandoah [sic] Trust, and a number of other trusts that belong to—various trusts that belong to my family. The Telford Lundahl trust also resides there. The address is 229 North Pine Street, Gordon, Nebraska, 69343.

- The court: That's where you reside?

- Ms. Telford: I reside there and I also reside in Green River because I have to take my sister to all of her cancer appointments.

Id. at pp. 12-13.

Ten days earlier, on September 9, 2016, Ms. Telford filed a second amended complaint in her case before Judge Lange in the District of South Dakota's Central Division. CIV. 16-3033, Docket 11. She signed the last page and underneath her signature listed her address as "320 E. Waterton St. Rapid City SD 57701[.]" Id. at p. 41. Below that address Ms. Telford included "c/o MARTI LUNDAHL 935 Wilderness Trail Green River, WY 82935[.]"[8] Id. Court mail sent to the address was returned as undeliverable because there was "no such street." CIV. 16-3033, Docket 10 at p. 1. With respect to the "Waterton" address, on October 7, 2016, less than one month after the second amended

---

[8]It is unavailing that Ms. Telford included the Wyoming address after "c/o." She still held out the Rapid City address as her residence to the court (or at the very least, an actual residence).

complaint, Judge Lange found "[t]here is no such location in Rapid City, although there is a condemned home reportedly for sale at 320 East Watertown Street in Rapid City, South Dakota." CIV. 16-3033, Docket 14 at p. 2. While Ms. Telford's second amended complaint before Judge Lange was not signed under oath, it violates Rule 11 of the Federal Rules of Civil Procedure. Rule 11(b) governs representations to the court:

> By presenting to the court a pleading, written motion, or other paper . . . [an] unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . it is not being presented for any improper purpose, such as to harass, cause unnecessary delay or needlessly increase the cost of litigation; [and] the factual contentions have evidentiary support or, if so specifically identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Fed. R. Civ. P. 11(b)(1) & (3). The court need not peel back the layers of deception and spotlight the false and inconsistent statements Ms. Telford presented to Judge Kopf and Judge Lange during a 10-day period. The actions speak for themselves.

This is not the first time federal courts expressed deep concern on this issue with Ms. Telford. In a District of Idaho case, the court stated: "This Court also has reason to believe that Plaintiff is not a resident of Idaho, given the numerous addresses she has used in this Court and the fact that Court mail to various plaintiffs in her actions is returned as undeliverable. The Court believes that her use of Idaho post office boxes is merely another attempt to gain access to a more favorable forum for her vexatious litigation." Nar Inc., 434 F. Supp. 2d at 857.

24

"Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991) (internal quotation marks omitted). "[A]lthough not easily defined, 'fraud on the court . . . can be characterized as a scheme to interfere with the judicial machinery performing the task of impartial adjudication, as by preventing the opposing party from fairly presenting his case or defense.' " Nichols v. Klein Tools, Inc., 949 F.2d 1047, 1048 (8th Cir. 1991) (quoting Pfizer, Inc. v. Int'l Rectifier Corp., 538 F.2d 180, 195 (8th Cir. 1976) abrogation on other grounds recognized by Briscoe v. County of St. Louis, Missouri, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012)). Finding fraud on the court "is justified only by the most egregious misconduct directed to the court itself . . . and must be supported by clear, unequivocal and convincing evidence." Id. (internal quotation marks omitted).

Considering the full spectrum of Ms. Telford's conduct, claiming a false residence may support finding fraud on the court. Cf. SPV-LS, LLC v. Transamerica Life Ins. Co., No. CV 14-4092, 2017 WL 3668765, at *3 (D.S.D. Aug. 23, 2017) ("Submitting a false discovery document—or fabricating evidence—has been referred to as the most egregious misconduct which justifies a finding of fraud upon the Court.") (internal quotation marks omitted)); see also Shepherd v. Am. Broadcasting Cos., Inc., 62 F.3d 1469, 1472 (D.C. Cir. 1995) ("[W]e hold that a district court may use its inherent

power to enter a default judgment only if it finds, first, by clear and convincing evidence—a preponderance is not sufficient—that the abusive behavior occurred; and second, that a lesser sanction would not sufficiently punish and deter the abusive conduct while allowing a full and fair trial on the merits."). Although the court does not find fraud on the court at this juncture, the court finds it must impose restrictions on Ms. Telford's ability to file cases in the District of South Dakota.

The District Court for the District of South Dakota is extremely busy. The court has nearly the highest volume of federal violent crime cases in the country. Unlike most federal courts, criminal cases in the District of South Dakota often proceed to a jury trial. The court also has a long tradition of jury trials in civil cases. Jury trials, a critical feature of our justice system, are time-consuming. "[E]very paper filed with the Clerk of this Court, no matter how repetitious or frivolous, requires some portion of the institution's limited resources. A part of the Court's responsibility is to see that these resources are allocated in a way that promotes the interest of justice. The continual processing of . . . frivolous requests . . . does not promote that end." In re McDonald, 489 U.S. 180, 184 (1989).

Under 28 U.S.C. § 1651(a), this court has authority "to enjoin litigants with lengthy histories of abuse from future filings or to impose such other restrictions pre-filing as may be necessary to thwart such abuse." Nar Inc., 434 F. Supp. 2d at 855-56 (citing 28 U.S.C. § 1651(a)). In the United States

Court of Appeals for the Eighth Circuit, a district court may enjoin a plaintiff who filed frivolous and vexatious lawsuits from filing further actions without first obtaining leave of the district court. See Sassower v. Carlson, 930 F.2d 583, 584-85 (8th Cir. 1991) (per curium); Akins v. Neb. Court of Appeals, 607 Fed. Appx. 606, 607 (8th Cir. 2015) (per curium) (unpublished). The district court may not impose restrictions on filings outside certain jurisdictions. See Van Deelen v. City of Kansas City, Mo., 262 Fed. Appx. 723, 723-24 (8th Cir. 2007) (per curium) (unpublished) (modifying an "injunction to apply only to actions filed in federal district courts within [the Eighth] Circuit").

Appreciating the totality of Ms. Telford's litigation tactics, especially those carried out in the District of South Dakota and recognized in the Districts of Nebraska and Idaho, "the record now before this Court shows beyond cavil that [Ms. Telford's] litigation activities have been both numerous and abusive, [and] the Court finds that [Ms. Telford] is a vexatious litigant and her litigation activities are in fact abusive, harmful, and intended to harass and annoy both the parties she names in her lawsuits and the entire judicial system she purports to invoke." Nar Inc., 434 F. Supp. 2d at 859; see Nelson, 209 F. Supp. 3d at 1131-35. As the many courts cited above have done, the court finds "because [Ms. Telford] is a vexatious litigant, it is necessary to restrict the future filings of [Ms. Telford], her agents, employees, assigns, and all persons acting in concert or participating with her, in this District as well." Nar Inc.,

434 F. Supp. 2d at 860.  The court details the restrictions below which apply to Ms. Telford filing new cases in the District of South Dakota.

The court takes judicial notice that the South Dakota state court in the Seventh Judicial Circuit has limited the method by which Ms. Telford may submit filings.  See Fed. R. Evid. 201.  That order is attached as Exhibit B.  The order requires Ms. Telford to "file any and all documents, pleadings and case filing statements via US Mail rather than personally appearing in the Clerk of Courts offices of Fall River/Oglala Lakota, Custer and Pennington Counties."  Id. at p. 1.  At this point, this court does not impose the same limitation on Ms. Telford.  Ms. Telford, however, is on notice that if the a reason arises to require her to submit all filings via United States Mail, the court will do so.

## ORDER

Based on the above analysis and good cause shown, it is

ORDERED that ANPC's motion to set aside entry of default (Docket 31) is granted.  Plaintiffs' corresponding motion to strike (Docket 37) is denied.

IT IS FURTHER ORDERED that defendants' motions to dismiss (Dockets 39, 41, 43 & 72) are granted.  Plaintiffs' claims against all defendants are dismissed without prejudice.

IT IS FURTHER ORDERED that plaintiffs' motions to strike (Dockets 48, 62 & 67) are denied.

IT IS FURTHER ORDERED that ANPC's motion for an extension of time to file an answer (Docket 45) is denied as moot.

IT IS FURTHER ORDERED that plaintiffs' request and motion regarding filing restrictions in the District of Utah (Dockets 78 & 79) are denied as moot.

IT IS FURTHER ORDERED that plaintiffs' motion to continue (Docket 86) is denied because it fails to state good cause.

IT IS FURTHER ORDERED that Holli Telford, both individually and through a third person, and under any current or future aliases, is permanently enjoined from filing any further civil lawsuits, motions to intervene, or other pleadings in the United States District Court for the District of South Dakota unless:

A.     At the time of the filing of any pleading Ms. Telford has prepaid in full the applicable filing fee required by the Clerk of Court;

B.     The pleadings are signed pursuant to Fed. R. Civ. P. 11 by an attorney admitted to the court; or

C.     Ms. Telford provides the Clerk of Court with a complaint or pleading including all of the following:

  1.     As exhibit A to the submission a copy of this permanent injunction; and

  2.     As exhibit B to the submission a declaration prepared pursuant to 28 U.S.C. § 1746 or a sworn affidavit certifying that the claim Ms. Telford wishes to file is a new claim never before raised by her in any court in the District of South Dakota; and

  3.     As exhibit C to the submission a listing by full caption of each and every lawsuit previously filed by Ms. Telford in any federal or state court

against each and every defendant to the lawsuit she wishes to file; and

4. As exhibit D to the submission attach a copy of each such previous complaint and a certified copy of its disposition; and

5. As exhibit E to the submission a list of any judgments or monetary sanctions previously imposed on Ms. Telford, or any person acting in concert with her, and the status of payment on any such financial obligation.

D. If Ms. Telford provides a submission under Part C, the judge presiding over the case shall review the submission and determine whether it will be approved for filing.

IT IS FURTHER ORDERED that the Clerk of Court for the District of South Dakota shall not file any pleading on behalf of Ms. Telford or anyone acting in concert with her unless the pleading complies with the directives prescribed above.

Dated February 26, 2018.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
CHIEF JUDGE